IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHEVES WOOD, ) | |
|     Plaintiff, ) | |
| ) | **Judge Joan B. Gottschall** |
|     v. ) | |
| ) | **No. 13 CV 8803** |
| CAREER EDUCATION CORPORATION, ) | |
| AIU ONLINE, LLC, and COLORADO ) | |
| TECHNICAL UNIVERSITY, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheves Wood's allegations of workplace discrimination date back to August 2013, when his supervisor commemorated Wood's interoffice transfer with a cake iced with what Wood characterizes as a racially hostile inscription.[1] *See* Am. Compl. at ¶ 17, Dkt. 22 ("Good Luck. We Hope You Fail!! ☺ Your [sic] Dead to us Now!!"). Wood ultimately filed suit against Career Education Corporation and related entities AIU Online and Colorado Technical University. He asserts that Chicago Technical University discriminated against him based on his race in violation of Title VII, 42 U.S.C. 2000e, *et seq*. (Count I) and that Career Education and AIU retaliated against him based on his filing of two EEOC charges (Count II).[2] The defendants' motion to dismiss Wood's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust and failure to state a claim is before the court. For the following

---

[1] The amended complaint alleges that Wood received the cake in 2014. (Am. Compl. at ¶ 17, Dkt. 22.) Given the complaint's other allegations and the EEOC charges that are attached to the complaint, all of which indicate that he received the cake in 2013, this appears to be a typographical error. The parties should promptly advise the court if this assumption is incorrect.

[2] In Count I of his amended complaint, Wood lists Colorado Technical University and Career Education as defendants. In his response memorandum, Wood states that "[u]pon further review . . . Count I is directed only against Defendant Colorado Technical University." (Pl.'s Resp. at 10, Dkt. 29.) The discrimination claim against Career Education in Count I is, therefore, dismissed with prejudice.

reasons, the motion is granted in part and denied in part. Wood's hostile work environment claim against Career Education is dismissed with prejudice as Wood has withdrawn this claim, his hostile work environment claim against Colorado Technical University is dismissed without prejudice and with leave to replead, and his retaliation claims against AIU and Career Education are dismissed without prejudice and with leave to replead.

## I. BACKGROUND[3]

### A. Wood's Transfer from Colorado Technical University to AIU

Wood is an African-American male. Career Education is a for-profit post-secondary educational services company that offers campus and web-based programs. Career Education owns other educational entities, including defendants AIU and Colorado Technical University. In May 2009, Wood began working in the admissions department at Colorado Technical University's Downers Grove, Illinois office. Wood is a "telephone dedicated employee," meaning that "he spends nearly all his work time handing telephone calls." (Am. Compl. at ¶ 14, Dkt. 22.)

Wood alleges that he was subjected to unspecified "verbal harassment due to his race" while employed at Colorado Technical University. (*Id*. at ¶ 16.) On August 3, 2013, in connection with Wood's upcoming transfer from Colorado Technical University to AIU, Wood's supervisor (whose name does not appear in the amended complaint) gave him a farewell cake.

---

[3] The facts in this opinion are drawn from Wood's amended complaint and are accepted as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). In resolving the defendants' motion to dismiss, the court has not considered an email submitted by the defendants as an attachment to their motion. *See*, *e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (" A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.")

The sheet-style cake (a photograph of which is attached as Exhibit 1 to the amended complaint) bears the following message in icing: "Good Luck. We Hope You Fail!! ☺ Your [sic] Dead to us Now!!" (*Id*. at ¶ 17.)

Two days later, on August 5, 2013, Wood began working at AIU's office in Downers Grove. On this date, Wood went to Colorado Technical University's human resources department and reported that he had received a "hostile" cake reflecting racial animus. (*Id*. at ¶ 18.) An unspecified human resources employee laughed at Wood and refused to take any action. Wood also emailed an unspecified Colorado Technical University vice president to complain about the cake but did not obtain redress. According to Wood, white employees received cakes to commemorate their departures from Colorado Technical University, but he "is not aware of any of those cakes being decorated with hostile messages." (*Id*. at ¶ 20.)

**B.** **Wood's First EEOC Charge and Subsequent Events**

On September 6, 2013, Wood filed a charge of discrimination with the EEOC that named Colorado Technical University as his employer. (*Id*. at Ex. 2.) In response to the question "discrimination based on," Wood checked off the "retaliation" box. He did not check off the "race" box. The charge states:

> I was hired by Respondent [Colorado Technical University] on or around May 26, 2009. My most recent position was Admissions. During my employment I [was] subjected to verbal harassment. Subsequently, I was constructively discharged. I believe I was discriminated against, in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id*.)

Between early September and early October of 2013, Sema Patel, an employee who works in AIU's "employee relations department[,] repeatedly telephoned and sent emails to

[Wood] about various aspects of his employment." (*Id.* at ¶ 25.) Wood believed that these communications were an effort to get him to discuss his EEOC charge. Wood asserts that the calls "interfered with [his] efforts to meet AIU's extremely demanding performance metrics" for telephone dedicated employees. (*Id.*)

In early October 2013, Bill Beckley, AIU's Vice President of Admissions, met with Wood, even though Wood did not report to Beckley, and had never reported to Beckley. Beckley told Wood that on July 8, 2013 – when Wood still worked at Colorado Technical University – Wood had mishandled a telephone call and made untruthful statements. Wood did not believe he had acted improperly so he asked to listen to a recording of the call, but Beckley told him that no recording existed.

During the meeting, Wood asked Beckley if the information about the call was a "verbal corrective action" and Beckley stated that it was not.[4] Later that same day, Beckley called Wood back into his office to "specifically advise" Wood that he had not been placed "on any type of corrective action." (*Id.* at ¶ 30.) Wood felt intimidated and threatened, and believed that Beckley was retaliating against him due to the EEOC complaint. Approximately one week later, Wood learned that Beckley had, in fact, issued a corrective action.

C.  **Wood's Second EEOC Charge and Subsequent Events**

On October 25, 2013, Wood filed a second charge of discrimination with the EEOC against Career Education. (*Id.* at Ex. 3.) Wood again checked off the "retaliation" box. The body of the charge states:

---

[4] The amended complaint does not provide any details regarding verbal or written corrective actions.

> I [Wood] began employment with Respondent on or about May 26, 2009. My current position is Admissions. I previously filed EEOC Charge #440-2013-05090. On or about October 3, 2013, I was given a verbal corrective action. I believe that I have been discriminated against in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id*.)

On November 4, 2013, Denise Jackson, "who works for AIU in a senior position in the employee relations department," asked Wood to meet with her regarding Wood's October 3d meeting with Beckley. (*Id*. at ¶ 33.) Jackson told Wood that the telephone call that Beckley had referenced had occurred in the spring of 2012, not July 2013 as Beckley had stated. Wood asked Jackson if he was "on verbal corrective action and Jackson said 'no.'" (*Id*. at ¶ 34.) Jackson ended the meeting by asking Wood what he wanted. Wood believed she was asking about the EEOC charges. As with the meeting with Beckley, Wood felt intimidated and threatened.

On November 26, 2013, Jackson told Wood that Beckley had issued Wood a corrective action based on the allegedly improper phone call. Jackson did not respond when Wood asked why she and Beckley had previously told him that he had not received a corrective action and why the corrective action was not in his personnel file. At the conclusion of the conversation, Jackson again asked Wood "what he was looking for." (*Id*. at ¶ 38.) Wood again felt intimidated and threatened.

Wood alleges that his meetings and communications with Jackson and Beckley "caused [him] to feel as if he was under extreme scrutiny by Defendants, and as if Defendants were seeking a way to terminate [his] employment." (*Id*. at ¶ 39.) After the defendants found out that Wood had filed a federal lawsuit, Jackson sent Wood an email stating that she had incorrectly said that Wood had received a corrective action. Although the amended complaint is unclear,

Wood appears to be alleging that he believed that he had received a written corrective action in retaliation for filing his first EEOC charge but later found out that he had either received a verbal corrective action or had received no corrective action.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ANALYSIS

The defendants raise two exhaustion arguments. First, they assert that Wood's race discrimination claim against Career Education is outside the scope of his two EEOC charges because those charges were based solely on alleged retaliation. Second, they argue that to the extent that Wood exhausted any claims, he did so only with respect to the entities he identified as his employer in the two EEOC charges (Colorado Technical University and Career Education, respectively), so he cannot proceed with any claims against additional defendants. With respect to the merits, the defendants contend that Wood's allegations about race discrimination and retaliation fail to state a claim for which relief may be granted.

A.     **Exhaustion**

   1.     **The Scope of Wood's EEOC Charge**s

Generally, a plaintiff must present his claims to the EEOC before he can file a federal lawsuit based on those claims. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). This rule gives the employer notice of the charged conduct and allows the EEOC and the employer a chance to settle the dispute. *Id.* A plaintiff may nevertheless proceed on claims not explicitly set out in a charge if those claims are "like or reasonably related" to the claims in his EEOC charge and could "be expected to grow out of an EEOC investigation of the charge." *Id*. (internal quotations marks and citation omitted); *see also Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).

In his first EEOC charge, which was filed on September 6, 2013, Wood checked off the "retaliation" box, stated that he had been subjected to unspecified "verbal harassment" and was "constructively discharged," and that he "*believe[d that he] was discriminated against, in retaliation*, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Am. Compl. at Ex. 2, Dkt. 22) (emphasis added.)[5] The defendants argue that Wood's current claim of race discrimination is beyond the scope of this charge because the charge alleged a single claim of retaliation.

The court acknowledges that numerous cases hold that when a plaintiff has complained to the EEOC only of retaliation, he cannot then bring a discrimination complaint because he has

---

[5] Wood does not argue that his second EEOC charge asserted a claim of race-based discrimination. This charge contains a retaliation claim that is largely similar to the claim in the first EEOC charge. (Am. Compl. at Ex. 3, Dkt. 22) ("I believe that I have been discriminated against in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended."). For present purposes, the difference between the two claims is that the second one expressly refers to protected activity.

not exhausted his remedies as to discrimination. *See*, *e.g.*, *Pelt v. Roosevelt Univ.*, No.13 C 3953, 2014 WL 1228418, at *4 (N.D. Ill. Mar. 25, 2014) (citing *Graham v. AT&T Mobility, LLC*, 247 Fed. Appx. 26, 29 (7th Cir. 2007) (affirming dismissal of the plaintiff's discrimination claim when the plaintiff checked the retaliation box on his EEOC charge and there was "no suggestion" that he was alleging discrimination)); *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("retaliation, sex discrimination, and sexual harassment charges are not like or reasonably related to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."); *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 504-05 (N.D. Ill. 2012) (in "describing the particulars of the discrimination, Plaintiff focused entirely on retaliatory conduct" and thus did not preserve a discrimination claim based on his race and ethnicity).

However, as noted above, "a complaint may properly encompass any discrimination like or reasonably related and growing out of charges filed with the EEOC." *Hernandez v. William Rainey Harper Coll.*, No. 10 C 2054, 2011 WL 5122698, at *11 (N.D. Ill. Oct. 27, 2011) (quoting *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993)). Moreover, the boxes "checked on the EEOC form do not necessarily control the scope of a subsequent civil complaint." *Kristufek*, 985 F.2d at 368. Instead, when reviewing a plaintiff's EEOC charge, the court must consider the box or boxes that the plaintiff checked off on the EEOC form, as well as the factual allegations in the charge. *See id.*; *see also Nasserizafar v. INDOT*, No. 12-CV-1534-WTL-DKL, 2013 WL 786779, *3 (S.D. Ind. Mar. 1, 2013). Thus, the law is clear that when a complainant provides enough factual detail so that the court can safely assume that an EEOC investigation into the complainant's allegations would encompass discrimination as well as

retaliation, an EEOC charge with the "retaliation" box checked off can support a subsequent discrimination charge raised in a federal complaint.

In this case, the court feels confident that an EEOC investigation would encompass discrimination based on the facts alleged in the charge as well as retaliation. The reason is that Wood explicitly described the factual matters he was complaining about – "I was subjected to verbal harassment and [was subsequently] constructively discharged" – before stating, in terms of what he "believes," that the discrimination was based on retaliation. When a complainant provides the EEOC with the factual basis for his charge, and then opines – as Wood explicitly does – that the employer's motivation was retaliation, the court cannot believe that any reasonable EEOC investigation would fail to focus on his factual description of what occurred and read his belief as to the employer's motivation as just that – a non-lawyer's speculation as to the reason his employer treated him as it did. To read this charge any other way would ascribe to an uncounseled lay person an ability to speculate as to motivation which is impermissible even for witnesses testifying at trial.

This conclusion is supported by the principle that an uncounseled individual filing an EEOC charge "should not be penalized for failing to identify the correct legal theory." *Hernandez*, 2011 WL 5122698, at *11; *see also Ramirez v. Dean Foods Co. of California*, No. SACV 11-1292 DOC ANX, 2012 WL 3239959, at *7 (C.D. Cal. Aug. 6, 2012) ("Lay persons should not be required to have knowledge of every potential statute that their employers may have violated . . . . This Court will not create a standard that would require aggrieved employees to retain counsel before filing a charge to have any chance of success."). As the Fifth Circuit remarked over forty years ago:

> [W]e begin with the obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations. The selection of the type of discrimination alleged, *i.e.*, the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged. In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations. Surely the only procedural requirement which should confront a Title VII complainant is the requirement that he state, within the ninety-day period, facts sufficient to trigger a Commission investigation [into the facts supporting the charging party's claim].

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970); *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citing *Sanchez* and holding that the EEOC's investigation of the plaintiff's "belief" that her termination was based on her race and sex "could have reasonably been extended to encompass a claim for retaliation" because retaliation was "inextricably intertwined with [the plaintiff's] complaints of race and sex discrimination"); *Covalt v. Pintar*, No. CIV.A. H-07-1595, 2008 WL 2312651, at *7 (S.D. Tex. June 4, 2008) (citing *Sanchez* and holding that the plaintiff who checked the "national origin" and "sex" boxes on the EEOC form had nevertheless exhausted her claim of racial discrimination because the written section of the charge asserted that she and other employees had been "subjected to wanton undignified racial and sexual treatment" and that she had complained to management about "racist statements").

Wood's EEOC charge, when read with the amended complaint, makes clear that the events of which he complains began with the cake, which he believed was racially motivated due to the alleged prior verbal harassment. (Am. Compl. at ¶ 16, Dkt. 22.) *See Brenston v. Wal-Mart*, No. 2:09 CV 026 PS, 2009 WL 1606935, at *3 (N.D. Ind. June 8, 2009) (considering the plaintiff's complaint and his response to the motion to dismiss to "clarif[y] whether he really asserted his Title VII claim to the EEOC"). To this extent, his charge limits the amended

complaint, but the court sees nothing in the amended complaint which attempts to sweep more broadly than the EEOC charge in this respect. Accordingly, Wood's first EEOC charge is adequate to support the allegations of race discrimination in his federal complaint. Wood has, therefore, sufficiently exhausted his race discrimination claim against Colorado Technical University. The motion to dismiss that claim based on the failure to exhaust is denied.

**2.     Did Wood Exhaust as to the Correct Defendants Named in the Federal Case?**

As noted above, the respondent in Wood's first EEOC charge was Colorado Technical University, and the respondent in the second EEOC charge was Career Education. The defendants contend that Wood's retaliation claim against AIU (Count II, which also seeks relief from Career Education), should be dismissed for failure to exhaust because Wood did not name AIU as a respondent in his EEOC charges.

As a general rule, "a party not named in an EEOC charge may not then be sued under Title VII." *Harder v. Vill. of Forest Park*, 466 F. Supp. 2d 1000, 1003 (N.D. Ill. 2006) (citing *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)). This rule ensures that the respondent has notice of the plaintiff's claim and enables the respondent to participate in conciliation proceedings. *Id*. The Seventh Circuit has recognized an exception to this rule for situations where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981).

Wood contends that the exception saves his claim against AIU based on the second EEOC charge because at the relevant time, AIU was a wholly owned subsidiary of Career Education. In his response to the motion to dismiss, Wood stresses that AIU was his direct

-11-

employer when he filed the second EEOC charge, knew about the charge, and could have participated in conciliation proceedings if it had desired to do so. The Seventh Circuit teaches that to be eligible for the exception, a plaintiff's complaint must allege that the defendant had "notice of the EEOC charge against it and an opportunity to participate in conciliation proceedings." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). Making the necessary allegations as to AIU in a response brief is insufficient. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (the plaintiff's attempt to clarify the allegations in his complaint in response to a motion to dismiss "founders . . . because of the axiomatic rule that a plaintiff may not amend his complaint in his response brief."). Thus, Wood's retaliation claim against AIU is dismissed without prejudice and with leave to replead.

**B.     Wood's Hostile Work Environment Claim Against Colorado Technical University**

"Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, — U.S. —, 133 S.Ct. 2434, 2441 (2013). To state a claim based on an allegedly hostile work environment, a plaintiff must allege that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment she complained of was based on her sex; (3) the conduct was either severe or pervasive; and (4) there was a basis for employer liability." *Passananti v. Cook Cnty.*, 689 F.3d 655, 664 (7th Cir. 2012). With respect to the first element, the "environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In evaluating offensiveness, the court must consider "the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether

it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014).

The defendants contend that the cake is insufficient to support a hostile work environment claim because it is a single incident. In contrast, Wood contends that the cake is actionable because he "received [it] from his own supervisor, and then complained to at least two additional superiors regarding the hostile environment he was experiencing, and those superiors did not take any action to assuage or remedy his claims." (Pl. Resp. at 4, Dkt. 29.) The cake's inscription does not explicitly refer to Wood's membership in a protected class. It appears that the cake was either a sophomoric attempt at humor or, as Wood suggests, a product of prejudice. But the only allegations supporting Wood's interpretation of the cake are his claims that he was subjected to unspecified "verbal harassment due to his race" before he received the cake and that white employees did not receive cakes with "hostile" inscriptions. (Am. Compl. at ¶¶ 16, 20, Dkt. 22.)

The inchoate allegation about "verbal harassment" is conclusory and, therefore, is insufficient to place Colorado Technical University on notice of the "grounds upon which [Wood's claim] rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotations omitted); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. The allegation that departing white employees received cakes with positive inscriptions does not provide the necessary clarification, as Wood's contention that the inscription on his cake was based on his membership in a protected class is equally conclusory. Wood may be able to

-13-

rectify these problems by alleging additional details. Accordingly, his race discrimination claim is dismissed without prejudice and with leave to replead.

**C.      Wood's Retaliation Claim Against Career Education**

In Count II, Wood alleges that Career Education (the respondent to the second EEOC charge) retaliated against him after he engaged in protected activity. To state a claim for retaliation against Career Education under Title VII using the direct method of proof, Wood must allege that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse action at the hands of [the defendant]; and (3) there was a causal link between the two." *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012). Alternatively, Wood may proceed with the indirect method of proof. This removes the causal link element and requires him to allege that a similarly situated employee who did not engage in protected activity was treated more favorably. *See id.* at 573.

Career Education contends that Wood failed to allege the adverse employment action element sufficiently. "An adverse employment action must 'materially alter the terms and conditions of employment.'" *Dass v. Chicago Bd. of Ed.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). Generally, "adverse employment actions for purposes of the federal anti-discrimination statutes [ ] fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; (3) unbearable changes in job conditions, such as hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

In support of his retaliation claim against Career Education, Wood alleges that shortly after he filed his first EEOC charge, Beckley challenged him about a phone call and issued a corrective action, even though Beckley had never supervised Wood.[6] Denise Jackson, in AIU's employee relations department, met twice with Wood about his meeting with Beckley, causing Wood to feel intimidated and threatened. Jackson told Wood that Beckley had issued a corrective action but subsequently retracted this statement. According to Wood, these interactions "interfered with his ability to perform his job" and to "meet [the] performance metrics" and thus are adverse employment actions. (Pl. Resp. at 6, Dkt. 29.) Wood also asserts that the inconsistent statements about the issuance of a written corrective action rise to the level of an adverse employment action as a corrective action would have caused him to become "three steps away from termination." (*Id.*) Although it is unclear, Wood may also be alleging that he received a verbal corrective action.

Even if Wood had received a verbal or written corrective action, "written reprimands without any changes in the terms or conditions of [a plaintiff's] employment are not adverse employment actions." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). This leaves Wood's allegations that the inconsistent communications about the corrective action were upsetting and interfered with his ability to perform his job adequately. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014) (quoting *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009)). Thus,

---

[6] As detailed above, Wood's allegations about the corrective action are unclear. The court cannot determine if a written corrective action was issued and withdrawn, if Wood was incorrectly told that a written corrective action had issued, or if Wood received a verbal corrective action. It is not even made clear what a corrective action is.

"although the definition of an adverse employment action is generous, an employee must show some quantitative or qualitative change in the terms or conditions of his employment or some sort of real harm." *Id*. (quotation marks omitted); *see also Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) ("an adverse action must materially alter the terms or conditions of employment to be actionable").

Wood's allegations do not satisfy this standard. The closest he comes is his allegation that the communications interfered with his ability to answer calls. But he neither asserts that the alleged interference affected enough calls to prevent him from performing his job, nor identifies any concrete harm resulting from the complained-of conduct. Similarly, Wood's allegations about written and verbal corrective actions are unclear, and he neither defines these employment actions nor specifies how they materially altered the terms and conditions of his employment. Thus, Wood's allegations lack "sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo*, 526 F.3d at 1084 (internal quotations omitted); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. Accordingly, Wood's retaliation claim against Career Education (Count II) is dismissed without prejudice and with leave to replead.

## IV. Conclusion

For the above reasons, the defendants' motion to dismiss [25] is granted in part and denied in part. Wood has withdrawn his hostile work environment claim against Career Education so this claim is dismissed with prejudice. Wood's hostile work environment claim against Colorado Technical University and his retaliation claims against AIU and Career Education are dismissed without prejudice and with leave to replead, consistent with this opinion

and counsel's Rule 11 obligations.  Wood may file a second amended complaint by April 21, 2015.  The defendants shall answer or otherwise plead by May 12, 2015.


Date:   March 31, 2015                                     /s/
                                                    Joan B. Gottschall
                                                    United States District Judge